Good morning, and may it please the Court. Christy Hughes from Federal Defenders on behalf of Mr. Gonzalez-Rodriguez. And I'm going to attempt to reserve two minutes for rebuttal, so I'll watch the clock. Your Honors, the government has conceded that Mr. Gonzalez-Rodriguez's trial was infective of constitutional error when the District Court admitted the CNR against him. The government claims this error was harmless, but the government has not and cannot meet its considerable burden to prove beyond a reasonable doubt that the CNR did not affect the jury's verdict. And to see why the government cannot meet this burden, I just want to back up a second and discuss this element of lack of consent from the Attorney General to reapply for admission. And I filed a 28-J on this on Friday, and I apologize. It appears that it wasn't faxed, so I don't know if the Court has it. I just gave a copy to Government Counsel, but I'll just talk about the case briefly. It's a BIA decision. It's called Torres-Garcia. And what it, I think, very helpfully clarifies is that there's a two-step process for someone to get permission to reenter the United States. The first step is to apply to the Attorney General for his consent to reapply for admission. And once the Attorney General grants his consent to reapply for admission, that person then needs to apply to the State Department and actually get some sort of admission document, an immigrant visa or a border crossing card or whatever. So it's a two-step process. So someone can actually have consent from the Attorney General to reapply for admission, but without that actual entry document from the State Department, he can still be guilty of an unlawful entry. That would be a 1325. So what that means here is that the government's only evidence going to this element of consent from the Attorney General rather than permission to be in the country was the CNR. All of the other evidence, and the government points in its brief to circumstantial evidence that Mr. Gonzales-Rodriguez was found hiding in the bushes or Mr. Gonzales-Rodriguez's post-arrest statement, the government points to that evidence as evidence for this element. But that evidence only goes to permission to be in the country. The only evidence that actually goes to the Attorney General's consent, which is the element 1326, is the CNR. Well, why can't we consider that circumstantial evidence, which seems pretty compelling? He was close to the border late at night hiding in the brush. And adding that, I know his statement requires corroboration. But is that not adequate corroboration? Well, two answers, Your Honor. First of all, the fact that he was found hiding in the brush just goes to whether or not he had permission to be here. And that was made clear in this BIA case, which is the alien actually applied for the Attorney General's consent to reapply for admission, and he got that consent from the Attorney General. He then reentered and was found actually hiding in the brush. And the BIA said, well, that's still an unlawful entry because you haven't yet taken the second step to get permission from the State Department to be here. So the evidence that he was here hiding in the brush, hiding from the Border Patrol, goes to whether or not he had permission to be here. But it doesn't go to whether or not he had consent from the Attorney General, the first step. And in response to your second question about his statement, the statement actually doesn't go to the Attorney General's consent. It also goes to permission to be in the country. What he was asked, and this is at the excerpt of record on page 137, he was asked, have you asked the Attorney General for a permit to enter the United States again after deportation? So ask the Attorney General for a permit to enter the United States. I mean, first of all, this question doesn't really make a lot of sense because the Attorney General doesn't give a permit to enter the United States. The State Department does. But he wasn't asked, have you asked the Attorney General for his consent to reapply for admission, which is that element of 1326, this very sort of technical element. So even if we look at the statement, which we've argued shouldn't have been admitted, but even if we look at the statement, it doesn't go to this element, and neither does the circumstantial evidence of hiding in the brush. My second point is when looking at the CNR, which, again, was the only evidence that went to this element, we have sort of a window into the jury's mind here of what they cared about in their verdict. And they sent a note out, and the note centered on this element. It was the jury was concerned about what Mr. Gonzales-Rodriguez had done to change his status to come back into the country. So the jury sends out this note. An hour later comes back with a verdict. So we know what the jury cared about here. And so the government cannot meet its burden to prove beyond reasonable doubt that this CNR, which was the official government evidence that he didn't have consent from the Attorney General, that the CNR didn't affect the jury's verdict. Because we know exactly what they cared about. This is what they were hung up on, was this very technical element. I also want to just say... That wasn't mentioned in the blue brief, right? No. And I apologize, Your Honor. It was just brought to my attention by one of my colleagues at the end of last week. So I quickly filed a 28-J. That's not the purpose of a 28-J. 28-J is to alert us to cases that have come down since the filing of the brief. To new cases. Yes. And I just thought it would be helpful for the court to have in front of it to sort of explain. You started off with it, so I gather you think it's pretty important. I think it's helpful, but I mean, if we look at the Ninth Circuit model jury instruction... What does it say? It says, the defendant knowingly and voluntarily reentered the United States without having obtained the consent of the Attorney General or the Secretary of DHS to reapply for admission into the United States. So the jury instruction itself is clear, but I submitted that case just to explain that it's possible to both have the Attorney General's consent and still be in the country illegally because you don't have the State Department's permission to be here. And I see Your Honor shaking her head. It is sort of a weird element, and that's why, and I apologize again for the late submission of that. It didn't come to my attention when I was researching, and a colleague brought it up to me. And I just thought it was helpful to explain that there's sort of a two-step process, and they're not the same thing. So the government didn't really prove, other than with the CNR, the lack of the Attorney General's consent. The government just proved lack of permission to be in the country. And as they're not the same thing, and the CNR was the only evidence of that, the government cannot prove beyond a reasonable doubt that this did not contribute to the jury's verdict. Unless the Court has any further questions for me, I'm going to reserve the remainder of my time for rebuttal. That's fine. Thank you, Your Honor. May it please the Court, Scott Lesowitz on behalf of the United States. I'd like to pick up where the defense left off on this issue of the CNR.  Thank you, Your Honor. First of all, there obviously is a two-step process. But despite this BIA case that defense is now raising in their 28-J letter, the Ninth Circuit has held in Cervantes Flores that, quote, the Attorney General's consent to apply for admission is tantamount to his consent to the admission itself. So the Ninth Circuit has previously held that, yes, there is a two-step process, but essentially the second step is a formality. Once you get the permission to reapply, you basically have now got, you will get the admission to come into the country. So I think it is highly unreasonable that if someone has paid the $400 fee, successfully filed the Form 212 to get permission to reapply, that after going through all these steps to lawfully reenter the United States, he would then choose this method to come in. That having done all this, being on the verge of having the right of just this one last step that's basically just a formality, that he would then choose to, at night, in this dangerous, rugged place, enter into the country illegally. It does not make sense. And also, there is other evidence corroborating the confession other than just the fact that he had obviously just snuck in, the fact that he was hiding. There's also the fact that he had been previously ordered removed, and he had actually been physically removed, physically deported, less than two years before the instant arrest. It's unreasonable to think that this person who was an aggravated felon, and obviously the fact that he's an aggravated felon wasn't in front of the jury, but the fact that he was barred from the United States would have been, that would have been in the documentation, that you have someone who's barred from the United States, who has to go wait in the back of line to come back in, that this person, in less than two years after being physically removed from the United States, had successfully reapplied. That's a difficult thing to imagine for the jury. There's definitely a permissible, logical inference that that's unlikely. Exactly what was the evidence that was before the jury. Let's not go into whether this is reasonable or not reasonable. What was the evidence before the jury that supports your position? Sure. They would have known from the warrant of removal that he had been physically removed and deported within two years. They also would have known that he was barred from the United States, that he was still within the period in which he was barred. So a logical inference could be made that... No, I'm just asking you what the evidence was, not what the inferences could be drawn. Tell us first exactly what the jury had. Sure. Like I said, they had the order of removal, which I believe was from about four years before the instant arrest. They had the warrant of removal, which documents his physical deportation, which, like I said, was less than two years prior to the instant arrest. They would have had the fact that he had entered the United States in a manner which was pretty clearly an illegal entry, the hiding, the at night, the rugged area, the fact that other people in the group were running away and assaulting the officer. And that all would have been in front of them. And in addition, they would have had both his field statement that he did not have any legal documents to enter the United States. And then they would have had his post Miranda that he had not applied for, as Ms. Hughes said, a permit from the Department of Homeland Security or Attorney General to reenter the United States. And I think the fact that they would be unable to give permission to reenter, that they only can give permission to reapply, actually cuts for the government, not for the defense. So all of that information, and it's important to remember here that because the defendant essentially gave a confession, that all we need is sufficient evidence to corroborate it. And I think the documentary evidence, the evidence that he was hiding, the fact that he's walking with a group at night, a seismic device at the border had just gone off, he's with a group of people, that one of them runs away when they see border, they're all hiding from border patrol, one of them runs away, one of them assaults the border patrol officer. This is not someone who's following the steps and is taking legal, this is not someone who's, this shows a disrespect for the law and shows someone who's not going to be taking the proper steps to do all his filing phase. And it's just, so I think that is our primary evidence. When the government rested its case, was there a Rule 28 motion? I believe that there was. I believe that they, the defense definitely did the proper steps to preserve their arguments for appeal. I'm blanking on that issue a little bit, I don't want to misrepresent, but Mr. Ficori, who handled it below, both in limine, and then every time these issues came up, was objecting. And then one thing I want to address that defense made a big issue of in her brief, has to do with the warrant of removals. And if there's any more questions on the CNR before I move on. On the warrant of removal, the defense tries to make it seem like there's this whole new standard under Melendez-Diaz that changes Crawford in the sense that the test no longer is whether a document is prepared in anticipation of litigation, but rather whether a reasonable person, an objective witness, would reasonably believe that the statement would be available for use at trial. I want to say a few things, because I was to explain why there's no change, and this language stated by the defense is not a new test. First of all, this new, this purportedly new language from Melendez-Diaz is a direct block quote from Crawford. So this is not new language. This is not something new. It's a direct block quote from page 52 of the Crawford decision, and the Melendez-Diaz decision provides no commentary on this block quote. There's no commentary saying, you know, we're adopting this new language or anything of that nature. And second of all, this language from Crawford was just an example of what other people have said could be testimonial hearsay. It's never even adopted by Crawford as a firm example of testimonial hearsay. They actually only found a few narrow instances that are definitely testimonial hearsay, and this language actually was quoted from an amicus brief from the National Association of Criminal Defense Lawyers. Additionally, Melendez-Diaz consistently talks about how the reason that the lab report now in that case was testimonial was because it was made for the trial. It was made for the litigation. It basically continues to use the anticipation of litigation language, that test. And also, it stated that the reason it was testimonial was because it was like an affidavit. Obviously, a warrant of removal is not like an affidavit. And then additionally, that language that the defense cites is from the plurality opinion, and it's not adopted by the concurring opinion by Justice Thomas. Therefore, it doesn't have a majority. Even if it did try to create a new test, it was only adopted by four justices, not five. And in addition, like I said, I cited in my brief, the only circuit that's addressed warrants of removal post-Melendez-Diaz was the Fourth Circuit in an unpublished opinion. They used the same test, the inanticipation of litigation test, and continue to find them to not be testimonial, because, like, as this Court found in Bahena-Cardenas, a post-Crawford decision, that warrants of removal are non-testimonial  Well, isn't that the answer right there? We've held that it's not. I completely agree, Your Honor. There's nothing in Melendez-Diaz that changes that. I just wanted to be clear, especially since defense counsel mentioned I didn't address this in my briefs. And then, once again, in terms of the Terry stock, I think that this is simple Galindo-Gallegos controls. It's fanciful to think that it doesn't. I point the judges to, Your Honors, to the LSTAT decision where it talks about how agents are not lawyers. They don't have the same, you know, we don't hold them to the same standards in terms of knowing whether statements are going to be admissible or not. There clearly were public safety concerns on the handcuffing. And once again, also, when Agent Carrillo drew his firearm, he kept it at his hip. He never pointed it at any of the individuals. The record is clear on that. You're just about over your time. Was I? You're just about over your time. In fact, you are over your time. Are there any other questions? Otherwise, I will submit. No. Thank you, Your Honors. Your Honors, Government Counsel made a few points that I want to address about the CNR that I didn't get to. First of all, it's not a formality to get permission from the State Department to actually enter the country. That's actually the most important part. And that is what's clear from the BIA case, is that someone who has gone through all of these steps to file the Form I-212 and get the Attorney General's consent will then still try and enter the country without waiting to get permission from the State Department. It's not a formality. There's actually a 10-year waiting period after someone is removed before they can get the Attorney General's consent. And then the person has to wait for an immigrant visa number. And those take a long time, depending on which country the person is from. And so it's not like the Attorney General gives his consent to reapply for admission, and then the next day the State Department says, yeah, great, you can come in. There's a long period of time in between those two things happening. Since there is a 10-year waiting period before you can even apply, it would seem that one could infer from this warrant of removal that this fellow simply couldn't have done that. Well, there wasn't any testimony to the jury about this 10-year waiting period. The order of removal was in evidence, but, I mean, the fact that someone has to reapply for permission, and in fact the form they fill out is an application for permission to reapply for admission after deportation or removal. So this element in 1326 assumes that someone has already been removed. So the fact that the jury had an order of removal in front of them doesn't really go to this element. That's the whole reason that someone has to reapply for admission, because they've been kicked out of the country. And there wasn't any testimony going to this 10-year waiting period, so the jury didn't have before it the fact that he couldn't just automatically come back in. That time gap wasn't before the jury. I also want to talk about government counsel said that there was a confession to this element. The confession, again, wasn't to this element. The confession was, I don't have a permit from the attorney general to come back in. I think I raised that pretty clearly in my opening argument that that's not the same element. To the extent that this question from the Border Patrol agents was unclear, I think that actually cuts in our favor, because if the jury is faced with an unclear question from a Border Patrol agent about a permit from the attorney general to enter the U.S., which doesn't go to this element, and a very clear government document, which the government has said shows that they did a diligent search about whether or not there was any consent from the attorney general, the jury is going to look at the document they have back with them in the jury room that clearly goes to this element. Because you can't go to the State Department for consent or permission until you have the attorney general consent. It would seem that if you don't have the first step, that should end any inquiry. Well, as to whether or not you have permission to be here, I think you're right, but the element doesn't talk about permission to be in the country. The element talks about the first step, which is the attorney general's consent. But if you don't have the attorney general's consent, that ought to end the matter. I think that if the element said whether or not you have permission to be here, that's correct, but because that's not what we were asking the jury, whether or not he had permission, we were asking about the first step. And again, I mean, I keep going back to this BIA case, but you can both have the attorney general's consent and still not have permission to be in the country. I apologize. I've gone over my time. Thank you. Thank you. Submit it.
judges: Walter, Fletcher B. , Paez